18890

DIAMOND SWIMMING POOL COMPANY, INC., Respondent, v.
Margie H. BROOME and Eugene M. Broome, Appellants

(166 S. E. (2d) 308)

*Messrs. Monteith, Monteith & Lydon,* of Columbia, *for Appellants,*

*Walter W. Brooks, Esquire,* of Columbia, *for Respondent,*

March 12, 1969.

LITTLEJOHN, Justice.

This is an action to foreclose a mechanic's lien.

Diamond Swimming Pool Company, the plaintiff herein, entered into a written contract with the defendant Eugene M. Broome setting forth certain dimensions and specifications for the construction of a swimming pool and patio in consideration of the sum of $3,000 paid in cash and a balance

of $4,975 due upon completion of construction. According to the plaintiff, the contract signed was the result of a redrafting of an earlier proposed contract which dealt with a larger pool at a higher price.

At the time construction commenced, Broome furnished a landscape drawing by which he directed the plaintiff's construction foreman to build the pool. Upon completion of the project a balance of $3,475 of the agreed consideration remained unpaid, and the defendants refused to make payment.

The plaintiff instituted the present action based on the written contract as allegedly modified by the landscape drawing furnished by Broome. The defendants answer denying any modification of the written contract. They further answered that the pool is much smaller than the one contracted for, that the patio is defective and was not built according to the specifications in the contract, and that they will have to pay more to correct the pool size and the defects in the patio than the $3,475 which the plaintiff seeks to recover.

The matter was heard before Honorable Harry M. Lightsey, Master in Equity for Richland County. The plaintiff contended that the first written contract submitted was for a larger pool at a higher cost; that this contract was rewritten and, through error in the course of rewriting, only the first two pages were rewritten leaving portions of the specifications for the larger pool; and that in any event the contract was modified with respect to the size of the pool by the landscape plan furnished by Broome. After hearing testimony and personally inspecting the construction site, the master found that the contract was effectively modified by the supplying of the landscape plans with instructions to use them, and that the plaintiff substantially performed the contract as modified. He further found that the patio is defective and that the imperfection therein entitles the defendants to a setoff in the amount of $1,275 against the amount due of $3,475.

The county court in a short order adopted the master's report in every respect, and the defendants appeal to this court. They allege error in the master's findings, concurred in by the lower court, in (1) holding that the original contract was modified by the landscape drawing; (2) holding that there was error in the re-drafting of the original contract; (3) holding that the plaintiff substantially complied with the contract; and (4) holding that $1,275 was the proper amount to be allowed by way of setoff.

The court or any of the parties to an action to foreclose a mechanic's lien may require that questions of fact be submitted to a jury. (Section 45-273 of the 1962 Code of Laws). Failure to request a jury trial, however, does not change the essential nature of the foreclosure proceedings established by statute. Confirmation of the master's findings by the court below gave those findings the same force and effect as the verdict of a jury, unless the court, as the trier of fact, committed some error of law leading to an erroneous conclusion, or the evidence is reasonably susceptible of the opposite conclusion only. We consider the exceptions in this light.

The first question presented concerns the finding that the written contract was modified by Broome's direction to build the pool and patio by a landscape drawing which he submitted to the foreman. The plan is a detailed landscaping scheme for a considerable amount of property of which the swimming pool area is only a relatively small part. The plaintiff's foreman on the project, among other witnesses for the plaintiff, testified that Broome instructed him to build the pool in accordance with the drawing; and Broome himself admits so instructing the foreman. The plaintiff contends that both the contract and the drawing could not be consistently followed. The defendant argued that the contract could have been followed and that the landscape plan was to be used only as a general guide for placement of the pool on the property.

The master had the benefit of hearing and observing the witnesses in this case; in addition he inspected and personally observed the construction project in dispute. We cannot say that his conclusion that the contract was modified so as to fit the pool and patio into the comprehensive scheme represented by the drawing was without evidentiary support. In making this determination the master may have considered, among other things, the fact that the defendants observed the construction from time to time and interposed no objection until the project was completed.

Because we agree with the master and the lower court that submission of the drawing by Broome constituted modification of the contract with respect to the size of the pool, we find it unnecessary to deal with the question of the adequacy of the evidence supporting a finding that an error was made in redrafting the original contract. The written contract was superseded by the modification, at least with respect to the only contractual specification here in controversy, to wit, the size of the pool.

The third question raised by the defendant concerns the master's finding that the plaintiff substantially performed the contract. Because the defendants take the position that the contract terms dealing with the size of the pool were neither modified by the landscape drawing nor intended to be changed by the redrafting of the written contract, they use the dimensions and specifications incorporated in the original written contract as the basis for comparison with the pool actually built. In so doing they conclude that substantial performance was not obtained.

Having determined that the contract was modified, however, it is the modified contract which must be compared with actual performance. The evidence is that the landscape drawing calls for a pool containing 924 square feet. The pool actually constructed, if the outside coping is included (as the testimony reveals is a frequently used way of quoting pool sizes), contains 946 square feet and without inclusion of the coping contains 788 square feet.

The doctrine of substantial performance was conceived for the case where a plaintiff's partial performance has already given to a defendant substantially all that he bargained for and is of such a nature that it cannot be returned. E. g., 17A C. J. S. Contracts § 508 (1963). Justice can best be achieved in such a case by a setoff against the contract price rather than by denial of recovery of the contract price. The master in this case listened to conflicting evidence on the inclusion of the coping in pool measurements and then visited the actual construction site. We cannot say that his finding of substantial performance was without evidentiary support.

The final question as stated in appellants' brief is as follows: "After a definite finding that there was a defect in the patio, was there any competent testimony to fix the amount necessary to correct the defect at $1,275?" In exception No. 6 the question is stated somewhat differently:

"6. The Court erred in confirming the Report of the Master which held that the Defendants were entitled to an offset of only $1,275.00 for faulty construction of the concrete deck, or patio; the error being that the Master found there was faulty construction and the only evidence by which the Master could arrive at the amount is the undisputed and uncontradicted testimony that to correct the defect would cost $3,400.00."

The error alleged is failure on the part of the master to accept the $3400 figure (the figure used is sometimes $3,-385).

The plaintiff submitted that there was no defect, and accordingly, introduced no evidence relative to the cost of correcting the defect. The only evidence in the record on the issue of damages for defects is the testimony of defendants' witness John Cutter. Mr. Cutter, who testified that he has made his living for fifteen years doing concrete work, estimated that it would take $3385 to repair the patio. He testified that it would be necessary to completely tear out the present patio and start over with new construction.

The defendants' position is that, having found that a defect existed, the master was obliged to accept the only evidence on the question of damages. Appellants do not seek to try the issue further but ask this court to impose appellants' estimate on the respondent as a matter of law.

Undoubtedly the general rule is that the testimony of an unimpeached disinterested witness which concerns facts within the witness' knowledge and competence and is neither improbable nor contradicted in any way by any other evidence in the case, must be taken as true. E. g., 58 Am. Jur. Witnesses § 864 (1948). There may be, however, inherent contradiction or improbability in the witness' statements which take the case out of the general rule and justify the fact finder in giving the testimony less than full value. Similarly, the witness' manner of testifying or omissions in his statement may give rise to reasonable doubts of his sincerity or knowledge. See Annot., 62 A. L. R. (2d) 1191, 1207-10 (1958).

On cross examination Mr. Cutter testified as follows:

"Q. Would you break down your costs on this, please, sir? How did you arrive at that figure?

"A. How did I arrive at it? Well, I don't have my figures here with me.

"Q. You can figure it on this piece of paper?

"A. No, I can't do that because I would have to get all my measurements and the square footage.

\* \* \*

"Q. What do you account for labor; how much money did you put on there for labor?

"A. I don't remember now, but I don't give my customers that information; I give them a figure. I don't itemize it out, $800 for labor, $400 for concrete—"

The master had three choices. First, he could have found no defects and allowed no setoff; secondly, he could have found defects and alloyed a $3385 setoff; or thirdly, he could have (and did) find that there were defects and the amount

of damages proper for the setoff was less than $3385. The defendants had the burden of proving the existence of the defects and it would appear that they carried this burden successfully. They also, however, had the burden of showing with reasonable certainty the amount of damages occasioned by the defective construction of the patio. Mr. Cutter simply said that repair costs would be $3385, almost half the contract price for the entire project (pool and patio). Though he stated that he had figured the repair job, he was unable, short of taking "two or three hours" to completely recalculate his estimate, to give the master even the most superficial break down of the cost elements comprising his figure of $3385.

Having declined to give the master a break down in the estimate of $3385, and thereby having failed to substantiate the amount of the setoff claimed, the defendants cannot now be heard to complain that the record lacks competent evidence to fix the amount of the setoff at $1275. Normally the master should more specifically indicate in his findings the basis for determining the amount of the setoff. The defendants, upon whom the burden of proof rested to establish the amount of the setoff with reasonable certainty, have failed to supply sufficient evidence to the master to permit such specific findings, and have failed to convince this court that the figure reached by the master and the lower court was erroneous.

The exceptions are without merit, and the lower court is Affirmed.

Moss, C. J., and Lewis, J., concur.

Brailsford and Bussey, JJ., dissent.

Brailsford, Justice (dissenting).

I respectfully dissent from so much of the opinion of Justice LITTLEJOHN as sustains the allowance to the defendants of an offset of only $1275.00. There has been no appeal from the Master's conclusion that the patio is defec-

tive and that defendants are entitled to an offset. The question is the amount to be allowed. The only testimony on the point is that of the defendants' expert witness who testified that the defective condition can be remedied only by tearing out the concrete and replacing it with concrete of proper finish and stripping. He estimated the cost at $3385.00.

I agree that the Master was not bound to accept the estimate of defendants' expert. However, he was not authorized to fasten upon another figure which has no support in the evidence. We cannot properly award judgment on the basis of the testimony of defendants' expert, which the Master has discredited. Nor, on this record, can we intelligently review the Master's naked conclusion that the defendants are entitled to a setoff of $1275.00. In my view, defendants' exception to the amount allowed should be sustained and the case remanded for a new trial on this issue.

BUSSEY, J., concurs.