ATLANTIC PURCHASERS, INC., Stella Maris Inn, Ltd., Appellants,

v.

AIRCRAFT SALES, INC., Donald J. Anklin, Appellees.

Nos. 82–1199(L), 82–1200, 82–1322.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1982.

Decided April 14, 1983.

Paul Copenbarger (Copenbarger & Copenbarger on brief), for appellants.

David R. Badger, Charlotte, N.C. (Ronald L. Chapman, David R. Badger, P.A., Charlotte, N.C., on brief), for appellees.

Before ERVIN and CHAPMAN, Circuit Judges, and BRYAN, Senior Circuit Judge.

ERVIN, Circuit Judge:

Stella Maris Inn, Ltd., and its wholly owned subsidiary, Atlantic Purchasers, Inc., brought this diversity action for fraud and breach of express warranty against Aircraft Sales, Inc., and its sole stockholder, Donald J. Anklin.[1] The jury awarded Stella Maris compensatory and punitive damages, and after the verdict was returned Stella Maris unsuccessfully requested the trebling of the compensatory award pursuant to the North Carolina Unfair Trade Practices Act of 1969, N.C.G.S. §§ 75–1.1, 75–16. Both Stella Maris and Aircraft Sales appeal. Finding no error in the district court's judgment, we affirm.

### I.

In 1975, Stella Maris bought a Beechcraft airplane from Aircraft Sales. It allegedly spent $25,000.00 modifying the plane before Aircraft Sales acknowledged that it could not convey good title. Aircraft Sales then suggested that it take back the plane and give Stella Maris credit for it toward the purchase of a Cessna. Anklin personally travelled to Florida to meet with Stella Maris' agent, where the parties prepared a draft agreement after Anklin made specific representations about the Cessna's mechanical condition and age. These representa-

tions were confirmed by the plane's log books on actual inspection of the plane in North Carolina, where, on August 21, 1976, Stella Maris and Aircraft Sales signed a lease purchase agreement. The agreement included a specific disclaimer of all warranties not described on its face. Stella Maris contends that this disclaimer was not part of the draft agreement, which, its agent was assured by Aircraft Sales, was identical to the proffered document. Within three weeks of delivery the Cessna suffered engine failure. Aircraft Sales performed repair work on the engines and submitted a bill that Stella Maris claims was grossly inflated. When Stella Maris refused to pay the bill, Aircraft Sales kept the plane. The present litigation ensued.

At trial, Stella Maris presented evidence indicating that the Cessna's engines had been operated for many more hours than Anklin and Aircraft Sales represented, that necessary airworthiness inspections prior to sale had not been performed as claimed, and that the log books had been tampered with so as to substantiate these representations.

The jury returned a special verdict finding that Anklin and Aircraft Sales made specific representations about the condition of the Cessna which as express warranties were part of the bargain between the parties, that Stella Maris relied on these warranties, that the defendants failed to make good on the warranties, and that Stella Maris suffered $31,000.00 in actual damages. In addition, the jury found that the defendants' representations were made with knowing and willful knowledge of their falsity and with the intent to induce reliance thereon, and that Stella Maris was entitled to recover $15,000.00 in punitive damages as a consequence. In response to the court's instructions to tender a judgment on the verdict, Stella Maris submitted a claim including a trebling of the actual damages and an award of attorneys' fees

---

1. Stella Maris and Atlantic Purchasers will be referred to collectively as "Stella Maris," Aircraft Sales and Anklin as "Aircraft Sales." Where the individual appellee Donald Anklin alone is meant, his name will be used.

pursuant to the North Carolina Unfair Trade Practices Act ("the Act").[2] After briefing and a hearing, the court denied Stella Maris' motion to amend its complaint and refused to treble the damages. The court also denied Aircraft Sales' motions to set aside the verdict and for a new trial. The court requested the parties to determine if they would agree to a new trial with supplemental pleading and preparation. Upon their failure to do so, judgment was entered for the amount awarded by the jury.

On appeal, Stella Maris contends that the jury verdict shows that it made out a clear case under the Act and that, in accordance with Fed.R.Civ.P. 54(c), it was entitled to treble actual damages and to attorneys' fees. It also argues that the district court should have permitted amendment of the pleadings pursuant to Fed.R.Civ.P. 15(a). It denies that the award of punitive damages is inconsistent with treble damages under the Act, and suggests that if it is inconsistent, the punitive damages should be eliminated and the actual damages trebled.

Aircraft Sales' position as appellee is that it was not put on notice of the possibility of treble damages prior to Stella Maris' post-verdict moves, that there was no evidence on essential elements of proof under the Act, and that Stella Maris has elected a punitive damages remedy to the exclusion of treble damages. As cross-appellant, Aircraft Sales contends that the court erred in submitting the breach of express warranty issue to the jury, and that, assuming fraud was properly submissible, the court erred in failing to charge the jury that Stella Maris' reliance on representations had to be reasonable. Donald Anklin also disputes the propriety of holding him personally liable.

II.

At the time the events which gave rise to this litigation occurred, the North Carolina Unfair Trade Practices Act stated:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

N.C.G.S. § 75–1.1(a) (1969).[3] The Act may be enforced by civil actions brought by the state attorney general, N.C.G.S. §§ 75–15.1, 75–15.2, and also confers a private right of action on an injured party, N.C.G.S. 75–16. In a private enforcement action, a prevailing plaintiff is entitled to have the damages assessed by the jury trebled. *Id.* The award of treble damages is a right of the successful plaintiff and is not subject to judicial discretion. *Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397, 402 (N.C.1981).

The procedure to be followed in a private action is bifurcated. "Ordinarily it would be for the jury to determine the facts, and based on the jury's finding, the court would then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce." *Hardy v. Toler,* 288 N.C. 303, 218 S.E.2d 342, 346–47 (N.C.1975). The elements of "unfairness" and "deceptiveness" are defined broadly: "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.... [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Marshall,* 276 S.E.2d at 403. Good faith is no defense to an alleged violation of the Act. *Id.* "Proof of fraud would necessarily constitute a violation of the [Act]." *Hardy,* 218 S.E.2d at 346. On the other hand, mere intentional breach of a valid contract is not, without more, a violation. *United Roasters,*

---

**2.** Stella Maris had made no use of or reference to the Act prior to this point in the litigation.

**3.** The Act subsequently was rewritten to eliminate the reference to "trade" and to define "commerce" as "all business activities, however denominated," except certain professional

services. N.C.G.S. § 75–1.1(b) (1977). This revision, which expanded the scope of the Act, should not be applied retroactively. *United Roasters, Inc. v. Colgate-Palmolive Co.,* 485 F.Supp. 1049, 1057 (E.D.N.C.1980), *aff'd,* 649 F.2d 985 (4th Cir.1981).

649 F.2d at 992. The "trade or commerce" requirement of the Act in its 1976 form is met by demonstrating that the parties were engaged in an activity involving "an exchange of some type . . . in which a participant could be characterized as a seller." *Johnson v. Phoenix Mutual Life Ins. Co.,* 300 N.C. 247, 266 S.E.2d 610, 620 (N.C.1980).

■ It appears that the jury's special verdict would support a finding of Aircraft Sales' liability under the Act. The jury specifically found that the defendants made representations about the Cessna's condition with knowledge of their falsity, and that Stella Maris relied on those representations. This finding encompasses the elements of the action of deceit or fraud, *see Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 229 S.E.2d 297, 302 (N.C.1976), and, as a matter of law, the commission of fraud in these circumstances constituted a violation of the Act. Had Stella Maris brought this case under the Act, we may assume it would have been entitled to treble damages.[4]

### III.

■ In a diversity action, we are governed by the substantive law of the relevant state, but we apply federal procedural rules. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). While it is clear that under North Carolina procedure a plaintiff would not be permitted to recover statutory treble damages when it had ar-

gued and won a common law compensatory damages award, *see Abernathy,* 285 S.E.2d at 327–328, Stella Maris correctly asserts that its claim for treble damages must be resolved under the more liberal Federal Rules of Civil Procedure. Rule 54(c) provides that, except in cases of judgment by default, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." As we stated in *Robinson v. Lorillard Corporation,* 444 F.2d 791, 803 (4th Cir.1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 665 (1971), "[t]his provision has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *See also New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 25 (4th Cir.1963) ("a party's misconception of the legal theory of his case does not work a forfeiture of his legal rights"), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). Rule 54(c) is not, however, without its limits. A party will not be given relief not specified in its complaint where the "failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief." *United States v. Marin,* 651 F.2d 24, 31 (1st Cir.1981). *Accord, Robinson,* 444 F.2d at 803. In particular, a substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring ad-

---

**4.** Stella Maris, of course, would not be entitled to both compensatory damages on a common law contract theory *and* a statutory treble damages award. *See Marshall v. Miller,* 47 N.C. App. 530, 268 S.E.2d 97, 103 (N.C.App.1980), *modified on other grounds,* 302 N.C. 539, 276 S.E.2d 397 (N.C.1981); *Abernathy v. Ralph Squires Realty Co.,* 55 N.C.App. 354, 285 S.E.2d 325, 327 (N.C.App.1982). We also doubt that North Carolina courts would uphold an award of punitive damages for the tort of deceit along with one of treble damages for the statutory violation. The state supreme court in *Marshall* described the Act's treble damages as "partially punitive in nature." 276 S.E.2d at 402. The two remedies are overlapping and, therefore, probably inconsistent, just as a breach of contract recovery and recovery under the Act are. *See generally In re "Dalkon Shield" Litigation,* 526 F.Supp. 887, 899 (N.D.Cal.1981) ("overlap-

ping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process"). In light of our federal procedural holding, *see infra,* we need not resolve this question of substantive state law. Stella Maris also seeks attorneys' fees pursuant to N.C.G.S. § 75–16.1(1)(1973). This claim is barred because Stella Maris did not show that Aircraft Sales' refusal to settle the suit was unwarranted, proof of which is a condition precedent to recovery of attorneys' fees under the Act, *id.,* and because Stella Maris failed to state specifically the claim for fees in the complaint. Fed.R.Civ.P. 9(g) (items of special damage must be pled specifically); *Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.,* 474 F.2d 840, 843 (3d Cir.1973) (attorneys' fees are items of special damage for Rule 9(g) purposes).

ditional relief under Rule 54(c). *See Goodman v. Poland,* 395 F.Supp. 660, 685 (D.Md. 1975). We believe that this exception to the Rule is applicable in the present case.[5]

Stella Maris' complaint gave no warning to Aircraft Sales that successful prosecution of the action could result in an award to Stella Maris of three times Stella Maris' actual damages. This default denied Aircraft Sales and its counsel the opportunity to make a "realistic appraisal of the case, so that [their] settlement and litigation strategy [could be] based on knowledge and not speculation." Fed.R.Civ.P. 26(b)(2), Advisory Committee Notes to 1970 amendments.[6] Furthermore, Stella Maris now seeks relief on the basis of a statute creating an unusual remedy that goes beyond "the general damages the law normally awards to compensate plaintiff for the injury he seeks to have redressed." 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1310 (1969). Fundamental fairness requires in such a case, where the statutory remedy may increase greatly the defendant's liability, that the opposing party be notified of the possibility of the unusual relief prior to the plaintiff's tender of a proposed judgment on the verdict. *Cf. Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 491 n. 9, 84 S.Ct. 1526, 1535 n. 9, 12 L.Ed.2d 457 (1964) (defendant's failure to plead antitrust claim in patent infringement case barred its recovery of treble damages, even if it proved entitlement to them, because the claim was never "adequately pleaded").[7] Stella Maris in its pleadings and throughout the trial sought

punitive damages, not treble damages. Having selected this theory, it should not be permitted for the first time after verdict to make such a fundamental change in its strategy. It has made its legal bed and the district court was completely justified in requiring that it lie in it. In light of our conclusion that Rule 54(c) did not permit the award of treble damages to Stella Maris, it is obvious that the district court cannot be faulted for refusing to permit Stella Maris to amend its complaint. That formalistic procedure would have served no purpose. The prejudice to Aircraft Sales which precludes the relief Stella Maris seeks did not arise from the absence of certain words from the latter's pleadings, but from the denial to Aircraft Sales of the "illumination ... as to the substantive theory under which [Stella Maris was] proceeding," *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 66, 99 S.Ct. 383, 387, 58 L.Ed.2d 292 (1978), which is the function of the pleadings under the Federal Rules. We conclude, therefore, that the district court's refusal to treble the jury award under the facts in this case was not an abuse of discretion and should be upheld. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975) (district court's decision under Rule 54(c) reviewable only for abuse of discretion).

### IV.

We may dispose of the defendants' claims on their cross-appeal more briefly.

---

**5.** *United Roasters* is not to the contrary. In that case, the district court improperly required the plaintiff to make an election between two alternative theories of recovery before submitting the case to the jury. 649 F.2d at 990. Stella Maris, in contrast, proceeded throughout the trial on its common law theory of recovery, introducing its statutory theory only after the jury returned its verdict.

**6.** This rationale for the 1970 amendment of Rule 26 specifically making the existence and contents of relevant insurance policies discoverable is relevant to our construction of Rule 54(c). One of the primary purposes of modern systems of civil procedure, a purpose which has its roots in notions of fundamental

fairness and due process, is to prevent the use of surprise and procedural ambush and so enable all litigants "to make the *same* realistic appraisal of the case." *Id.* (emphasis supplied).

**7.** We are unpersuaded by Stella Maris' reliance on the *ad damnum* clause in its complaint, which indeed requested relief greatly in excess of the actual jury award trebled. The amount of that award supports our conclusion that the *ad damnum* clause was inflated and would have been disregarded by competent counsel in favor of an independent assessment of Aircraft Sales' potential liability. *Cf. McGowan v. Gillenwater,* 429 F.2d 586, 587 (4th Cir.1970) (pleadings rarely of evidentiary value).

Aircraft Sales contends that the express disclaimer of warranties in the lease purchase agreement absolves it of liability. However, the lease purchase agreement was for the transfer of a Cessna with certain characteristics, to be confirmed by the plane's log books. Stella Maris introduced evidence, which the jury apparently believed, that the log books were tampered with and the representations false. The parol evidence rule cannot be invoked to exclude this evidence. *See* 3 A. Corbin, *Contracts* § 580 (1960). Aircraft Sales also suggests that the district court should have charged the jury that Stella Maris' reliance on its representations had to be reasonable to justify recovery. This contention is groundless both under the Act, *Marshall,* 276 S.E.2d at 403, and the common law. *See Restatement (Second) of Contracts* § 164, Comment d (1981).

 Anklin, finally, argues that he could not be held personally liable to Stella Maris since Aircraft Sales was the legal seller in the transaction. This argument is without merit: under North Carolina law, the corporate veil will be pierced when fraud is shown. *See Huski-Bilt, Inc. v. First Citizens Bank & Trust Co.,* 271 N.C. 662, 157 S.E.2d 352 (N.C.1967); *Ram Textiles, Inc. v. Hillview Mills, Inc.,* 47 N.C. App. 593, 267 S.E.2d 700 (N.C.App.1980), *disc. review denied,* 301 N.C. 530, 273 S.E.2d 454 (N.C.1980). Fraud clearly was shown here, and Anklin could be held personally liable for the actions of his wholly owned corporation.

### V.

For the foregoing reasons, the decision of the district court is affirmed.

AFFIRMED.

1. N.C.G.S. § 75–1.1 Methods of competition, acts and practices regulated; legislative policy.
 (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

 \* \* \* \* \* \*

 N.C.G.S.
 § 75–16: Civil action by person injured; treble damages.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

Terming as "indecent" the plaintiffs' claim of trebled damages, the District Judge denied any recovery whatsoever of damages for violations of the North Carolina Unfair Trade Practices Act.[1] So it is that we must inquire by whom and by what was the indecency caused.

### I.

Review of the evidence immediately establishes that violations of the Act, which created the right to trebled damages, were committed by the defendants. The record at once confirms this conclusion by its recital of the jury's answers to the interrogatories submitted by the court. They follow:

(1) Did the defendants expressly represent or warrant to plaintiffs that the Cessna airplane had recently undergone a 100-hour inspection and had had only the major repairs and only the amounts of hours on its engines and air frame that were recorded in the aircraft log books:

ANSWER: Yes

(2) If so, did the plaintiffs rely upon those representations or warranties or any of them, and did they become a part of the bargain between the plaintiffs and the defendants?

ANSWER: Yes

(3) Did the defendants breach or fail to make good on those express warranties?

ANSWER: Yes

(4) ....

(5) [THIS ISSUE IS TO BE ANSWERED ONLY IF YOU HAVE ANSWERED

If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment *shall* be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict. (accent added)

THE FIRST ISSUE IN FAVOR OF THE PLAINTIFFS AND HAVE ALREADY AWARDED THE PLAINTIFFS SOME AMOUNT OF DAMAGES.] If so, were the representations of the defendants knowingly and wilfully made with knowledge of their falsity and with the intention that the plaintiffs would rely upon them to their detriment?

ANSWER: Yes

(6) . . . .

The force of these verdicts in revealing the unenviable—perhaps "indecent"—character of the defendant appellees is increased by the failure of the defendants to take the stand as witnesses or otherwise deny under oath the allegations of knowing and wilful misrepresentations. These accusations of fraud were pleaded with particularity by the plaintiffs in accordance with Federal Rule of Civil Procedure 9(b) and ample proof of their occurrence was admitted into evidence during the trial.

As stated by the Supreme Court of North Carolina, "[p]roof of fraud would necessarily constitute a violation of the provision against unfair and deceptive acts [N.C.G.S. § 75–1.1 *supra* n. 1]. . . ." *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). A jury though, does not directly determine whether a litigant has contravened the statutes. Rather, the jury's function is "to find the facts, and based on the jury's findings the court must then determine as a matter of law whether the defendant's conduct violated G.S. 7501.1." *Love v. Pressley*, 34 N.C.App. 503, 516, 239 S.E.2d 574, 583 (1978) *cert. denied*, 294 N.C. 441, 241 S.E.2d

843 (1978); *Hardy*, 288 N.C. at 310, 218 S.E.2d at 346–47. Consequently, the jury's finding that the defendants defrauded the plaintiffs *ipso facto* generates the conclusion that the prohibitions of the Act were transgressed.

Once the court ascertains that the Act has been violated, an award of treble damages under N.C.G.S. 75–16 is not a matter for further jury consideration; it is a post-verdict assessment to be made by the court *after* the jury has fixed liability. *Marshall v. Miller*, 302 N.C. 539, 540–41, 276 S.E.2d 397, 399 (1981). Moreover, the trebling of any damages assessed is not a matter within the trial court's discretion, but "is automatic once a violation is shown." *Id.* at 547, 276 S.E.2d at 402. Thus, treble damages are not awarded by the verdict; they are an *effect* of the verdict. This liability of the defrauding defendants was fixed by a statute intended to express a *public policy* of North Carolina. Its origin, purpose and application of the law were laid out by the Supreme Court in *Marshall. Id.*

Mistakenly, the defendants assert that the recovery of punitive damages by the plaintiffs precludes the allowance of treble damages.[2] The Supreme Court of North Carolina, however, has never declared that the receipt of one bars the other. In *Hardy*, a case concerning misrepresentations made during the sale of an automobile, the plaintiff prayed for actual, punitive and treble damages. 288 N.C. at 304, 218 S.E.2d at 343. The Court held that the defendant's actions were fraudulent, but not sufficiently fraudulent to subject the defendants

---

**2.** In North Carolina, the law employs punitive damages both to punish intentional wrongdoing and to deter others from similar behavior. *Newton v. Standard Fire Insurance Co.,* 291 N.C. 105, 113, 229 S.E.2d 297, 302 (1976). Punitive damages are awarded above and beyond actual damages and never are granted as compensation. *Id.* at 113, 229 S.E.2d at 302; *Nunn v. Smith,* 270 N.C. 374, 377, 154 S.E.2d 497, 498, 499 (1967); *Overnite Transportation Co. v. International Brotherhood of Teamsters,* 257 N.C. 18, 30, 125 S.E.2d 277, 286 (1962).

To recover punitive damages, a plaintiff must prove that the defendant acted "*wilfully or* under circumstances of rudeness, oppression or in a manner which evidences a reckless and wan-

ton disregard of the plaintiff's rights." *Hardy v. Toler,* 288 N.C. 303, 306–07, 218 S.E.2d 342, 345 (1975). Actionable fraud inherently involves intentional wrongdoing because "[f]raud is a malfeasance, a positive act resulting from a wilful intent to deceive . . ." *Newton* 291 N.C. at 113, 229 S.E.2d at 302; *Davis v. Highway Commission,* 271 N.C. 405, 408, 156 S.E.2d 685, 688 (1967). *Newton* represents a revision of the law concerning punitive damages, from those principles set forth in *Hardy*. Consequently, a plaintiff who demonstrates actionable fraud by the defendant need no longer also show aggravating circumstances in order to receive punitive damages. *Newton,* 291 N.C. at 113–14, 229 S.E.2d at 302.

to punitive damages. [Incidentally, this deficiency is not the fact presently]. *Id.* at 307 218 S.E.2d at 345. Thus it demonstrated the distinction between the two classes of damages. The Court confirmed this view, also holding that the false representations constituted unfair and deceptive acts in violation of § 75–1.1 and *trebled* the actual damages in accordance with § 75–16. *Id.* at 311, 218 S.E.2d at 348. The Court predicated its conclusion on the ground that § 75–16 "is itself punitive in nature." [3]

Again, it is worthy of note, that the State Supreme Court rejected the notion that the treble damages provision, § 75–16, was exclusively penal in nature. *State ex rel. Edmisten v. J.C. Penney Co.,* 292 N.C. 311, 319, 233 S.E.2d 895, 900 (1977). As a result, the Court of Appeals held that *actual damages, even if trebled via § 75–16, were not a penalty.*[4] In sum, these decisions delineate a clear distinction in both purpose and scope between treble and punitive damages.

## II.

Notwithstanding their claims to the contrary, the defendants were fully aware of this potential liability. Repeated notice of their treble damage accountability was given before and after verdict. The statute itself carried word of this liability before trial. The law of North Carolina charged them with notice that conduct such as theirs was denounced by section 75–1.1. They were made civilly liable by the treble damage statute, section 75–16, as well as by the decision in *Hardy,* 288 N.C. at 309, 218 S.E.2d at 346. Indeed this was a claim within the prayer of the complaint "for such further relief as may be just and proper."

Obviously then, further pleadings by the plaintiffs were unneeded. Simply to make their claims more formal, plaintiffs moved to amend the complaint to *emphasize* this claim. Although F.R.C.P. 15 liberally permitted the amendment and Rule 54(c) allowed this relief, even if the party had not demanded it in his pleadings, the District Judge overruled the motion. This was an abuse of discretion for the issue was not one of discretion in any event.

Nonetheless, the majority of this Court would uphold the decision of the District Judge arguing that the plaintiffs unduly had failed to plead a cause of action under the Act and so, prejudiced the defendants. Aside from the demerits of the defendants' claims, it must also be recalled that where the jurisdiction of the Federal Court rests on diversity of citizenship, the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), broadly dictates that the court apply State substantive law

---

**3.** *Id.* In contrast to a plaintiff seeking punitive damages, a plaintiff suing for violations of the North Carolina Unfair Trade Practices Act, N.C.G.S. §§ 75–1.1,–16, is not required to establish intentional wrongdoing on the part of the defendant. *Marshall v. Miller,* 302 N.C. 539, 547, 276 S.E.2d 397, 402 (1981); *see also United Roasters, Inc. v. Colgate Palmolive Co.,* 649 F.2d 985, 991 (4th Cir.1981). Rather, the plaintiff need only demonstrate that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception. *Marshall,* 302 N.C. at 548, 276 S.E.2d at 403.

The Supreme Court of North Carolina further has held that the treble damages statute, N.C.G.S. § 75–16, is both remedial and punitive in nature, a "hybrid statute" that sanctions an entirely statutory cause of action. *Id.; Edmisten v. J.C. Penney, Inc.* 292 N.C. 311, 319, 233 S.E.2d 895, 900 (1977). Although proof of fraud "necessarily constitute[s] a violation of the provision against unfair and deceptive acts [75–1.1]," such proof is not integral to a recovery under § 75–16. *Hardy,* 288 N.C. at 309, 218 S.E.2d at 346.

**4.** *Holley v. Coggin Pontiac, Inc.,* 43 N.C.App. 229, 237, 259 S.E.2d 1, 6 (1979) *petition for discretionary review denied* 298 N.C. 806, 261 S.E.2d 919 (1979). In *Holley,* the North Carolina Court of Appeals confronted the issue again in considering the question of whether North Carolina's one year statute of limitations for actions subjecting a defendant to a penalty applied to suits under § 75–1.1. The Court stated that § 75–1.1 served three major purposes, only one of which was punitive:

(1) to serve as an incentive for injured private individuals to ferret out fraudulent and deceptive trade practices, and by so doing, to assist the State in enforcing the act's prohibitions; (2) to provide a remedy for those injured by way of unfair and deceptive trade practices; and (3) to serve as a deterrent against future violations of the statute. *Id.*

when adjudicating rights created by that State. *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1964); *Markham v. City of Newport News,* 292 F.2d 711, 718 (4th Cir.1961). What constitutes a proper remedy for the harm suffered by a plaintiff is a question of substance governed by State law. *McLeod v. Stevens,* 617 F.2d 1038, 1041 (4th Cir.1980). As already noted, and as conceded by the majority, treble damages are a proper remedy for the plaintiffs in accordance with the court decisions and statutes of North Carolina.

The doctrine of *Erie,* however, does not generally extend to matters of Federal jurisdiction or procedure. *Id.* At all events, the availability of treble damages as a remedy is assumed by F.R.C.P. 54(c) and 15(b) even though plaintiffs' complaint did not expressly request such an award. *McLeod,* 617 F.2d at 1040; *see* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1491 (1971).

Rule 54(c) allows a party to receive the relief to which he "is entitled, even if the party has not demanded such relief in his pleadings." This Court has liberally construed this provision "leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the basis of the facts proved." *Robinson v. Lorillard Corp.,* 444 F.2d 791, 803 (4th Cir.1971). Additionally, Rule 15(b) permits amendment of the pleadings to conform to the evidence presented at trial when issues not covered by the pleadings are tried by the "express or implied consent of the parties." *McLeod,* 617 F.2d at 1041. These rules further a theory of liberalized pleading and procedure under which "a party's misconception of the theory of his case does not work a forfeiture of his legal rights." *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 25 (4th Cir.1963).

Although substantial prejudice to an opposing party may defeat relief under 54(c), *Robinson,* 444 F.2d at 803, the present defendant's claim of prejudice is unpersuasive. An award of treble damages would stem directly from the facts proved at trial con-cerning the defendant's fraud. *Id.* at 803; *United States v. Marin,* 651 F.2d 24, 31 (1st Cir.1981). More importantly, the issue of fraud was raised by the initial pleadings, was presented to the jury, and was central to a recovery of actual or treble damages. *Rental Development Corp. v. Lavery,* 304 F.2d 839, 843 (4th Cir.1962).

In respect to any purported surprise, the defendants continually were on notice that the plaintiffs sought a substantial recovery arising from the sale of sophisticated machinery. No fundamental unfairness would be worked upon the defendants by the trebling of damages particularly because these damages are sought simply as a supplement to general damages. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1311 (1971).

Therefore, I would reverse the judgment of the District Court and remand with instructions to treble the actual damages awarded by the jury.